No. 16-15251

---

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

PAUL PERKINS; PENNIE SEMPELL; ANN BRANDWEIN;

ERIN EGGERS; JAKE KUSHNER; NATALIE RICHSTONE;

NICOLE CROSBY; CLARE CONNAUGHTON; LESLIE WALL,

*Plaintiffs - Appellees*,

v.

MARY MEANS,

*Objector - Appellant*,

v.

LINKEDIN CORPORATION,

*Defendant - Appellee*.

_____

Appeal from the Judgment of the United States District Court for the Northern
District Of California San Jose Division
D.C. No. 5:13-cv-04303-LHK
(Hon. Lucy H. Koh)

_____

**APPELLANT'S OPENING BRIEF**

---

Frederic R. Fletcher
FLETCHER LAW OFFICES
417 2nd Street, Ste 204
Eureka, CA 95501
Telephone (707) 502-2642
Facsimile (888) 979-8171

*Attorneys for Appellant Mary Means*

# **TABLE OF CONTENTS**

**Page**

AMENDED CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT

STATEMENT REGARDING ORAL ARGUMENTS

TABLE OF CONTENTS ......................................................i

TABLE OF CITATIONS ....................................................iv

STATEMENT REGARDING ADOPTION OF BRIEFS ................................1

STATEMENT OF JURISDICTION ...............................................1

STATEMENT OF THE ISSUES ....................................................1

STATEMENT OF THE CASE.........................................................3

SUMMARY OF ARGUMENT .......................................................7

ARGUMENT .....................................................................9

I.    The District Court Erred in Approving a Class Notice which Failed to Apprise the Class Regarding the Value of the Claims Released ...........................9

II.    The Claims Form was Designed to Discourage Claimants ......................10

III.    The Release Included Future Claims & is an Unreasonably Broad Insurance Policy for LinkedIn ................................................................12

IV.    The Prospective Relief Takes from the Class More than it Gives ........13

V.    The Cy Pres Distribution is a Conflicted Backdoor Reversion ............15

i

VI.     Class Counsel's Fee Award was Unreasonably High............................16

VII.    The Notice Purposefully Omitted Material Information …………..18

Conclusion………..............................................................……19

Statement of Related Cases ...........................................................20

Certificate of Compliance...............................................................21

Certificate of Service ....................................................................22

## TABLE OF CITATIONS

Federal Cases:

*Bailey v. Great Lakes Canning, Inc.*,

908 F.2d 38 (6th Cir. 1990) ...................................................................5

*Culver v. City of Milwaukee,*

277 F.3d 908 (7th Cir. 2002) ...............................................................7

*Forbush v. J.C. Penny Co., Inc.,*

994 F.2d 1101 (5th Cir. 1993) ...............................................................6

*F.W.F., Waters v. Int'l Precious Metals Corp*.,

237 F.3d 1273 (11th Cir. 2001) ....................................................... 5-6

*Grant v. Bethlehem Steel Corp.,*

823 F.2d 20 (2d Cir.1987). ...............................................................7

*Grunin v. International House of Pancakes,*

513 F.2d 114 (8th Cir.) ...................................................................7

*In re Cendant Corp. Litigation*,

264 F.3d 201 (3d Cir.2001) ...............................................................7

*In re Air Crash Disaster at Florida Everglades*,

549 F.2d 1006 (5th Cir. 1977) ...........................................................8

*In re Omnivision Techs., Inc.,*

559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007)……………………………..18

*In re Prudential Ins. Co. of Am. Sales Practice Litig.,*

148 F.3d 283 (3d Cir. 1998) ...............................................................5

*Mace v. Van Ru Credit Corp.,*

109 F.3d 338 (7th Cir. 1997) .............................................................6

*Marisol A. v. Giuliani,*

126 F.3d 372 (2d Cir. 1997) ..............................................................6

*Mirfahisi v. Fleet Mortgage Corp.,*

 356 F.3d 781 (7th Cir. 2004) ............................................................7

*Pearson v. NBTY, Inc.,*

772 F.3d 778, 784 (7th Cir. 2014)………………………………………17

*Plummer v. Chemical Bank,*

 668 F.2d 654, 658 (2d Cir.1982) .......................................................7

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,*

390 U.S. 414, 434, (1968). .................................................................6

*Reynolds v. Beneficial Nat'l Bank,*

288 F.3d 277(7th Cir.2002). ..............................................................7

*Shrader v. White,*

7761 F.2d 975 (4th Cir. 1985) ............................................................6

*Uhl v. Thoroughbred Technology & Telecommunications, Inc.*,

309 F.3d 978 (7th Cir.2002) ...............................................................7

**Statutes:**

28 U.S.C § 1713 ........................................................................ 6-7

Fed. R. Civ. P. 23....................................................................3, 18, 19

Cal. Civ. Code § 3344…………………………………..………….19

**Treatises:**

Managing Class Action Litigation: A Pocket Guide for Judges (Third Edition - 2010)

Federal Judicial Center, Barbara J. Rothstein & Thomas E. Willging.............11

## STATEMENT RE: ADOPTION OF BRIEFS OR OTHER PARTIES

In the interests of judicial economy, Appellant adopts the Appellant Brief (s) of the other Objector(s) in *Brown v. Perkins*, et al. Case No. 16-15398; *House v. Perkins*, et al. 16-15430; and *York v. Perkins*, et al. Case No. 16-15414, because many as of the issues and objections are materially the same. Although the other Appellants may have a reputation for repetitive frivolous objections, the unfairness of the Settlement has even elicited legitimate objections from professional objectors.

## STATEMENT OF JURISDICTION

Plaintiffs invoked the District Court's jurisdiction under the *Class Action Fairness Act of 2005* and 28 U.S.C §§ 1332(d)(2) and (6). Appellant filed his notice of appeal on February 17, 2016. ER 218. This Court has jurisdiction under 28 U.S.C. 1291. See *Devlin v. Scardelleti* 536 U.S. 1, 14 (2002), ("We hold that nonnamed class members like petitioner who have objected in a timely manner to approval of the settlement at the fairness hearing have the power to bring an appeal without first intervening." ER 7.

## STATEMENT OF THE ISSUES

1.     The District Court erred in approving a Class Notice which failed to apprise the Class regarding the Value of the Claims Released.

1

2.     Whether the District Court erred in approving a claims form which exposes the Class Members to perjury charges and discouraged claimants.

3.     Whether the District Court erred in approving a Release which included future claims and is an unreasonably broad insurance policy for LinkedIn.

4.     Whether the District Court erred in approving prospective relief which takes from the class more than it gives.

5.     Whether the District Court erred in approving a *cy pres* distribution which can be manipulated to ensure the class does not receive a fair portion of the distribution to the benefit of Defendant LinkedIn.

6.     Whether the District Court erred in approving a fee award which was not supported by the result or litigation efforts of Class Counsel.

7.     Whether the Class Notice purposefully failed to inform California Class Members that they would be waiving statutory penalties under California Civil Code § 3334 by joining the Settlement.

(An addendum is filed concurrently setting forth verbatim statutes and treatises cited herein pursuant to *The Appellate Lawyer Representatives' Guide To Practice in the United States Court of Appeals for the Ninth Circuit*.)

## STATEMENT OF THE CASE

*Facts*

Plaintiffs brought a putative class action in the United States District Court for the Northern District of California against LinkedIn, captioned *Perkins et al.v. LinkedIn Corporation*, Case No. 13-CV-04303-LHK ("Action"), asserting violations of (1) California's common law right of publicity; (2) California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, et seq.) (the "UCL"); (3) the Stored Communications Act, 18 U.S.C. §§ 2701, et seq.; (4) the federal Wiretap Act, 18 U.S.C. §§ 2510, et seq.; (5) California Penal Code § 502; and (6) the California Invasion of Privacy Act, Cal. Penal Code §§ 630, et seq., based on LinkedIn's alleged use of Add Connections to grow its member base. ER 683.

On October 2, 2013, Plaintiffs filed a First Amended Complaint ("FAC"), asserting the same claims, but dropping the California Invasion of Privacy Act claims. ER 634. On December 6, 2013, LinkedIn moved to dismiss the FAC, and in the alternative to strike the class allegations, pursuant to *Federal Rules of Civil Procedure* 9(b), 12(b)(1), 12(b)(6), 12(f), 23(c)(1)(A), and 23(d)(1)(D). ER 588. On June 12, 2014, the Court granted in part and denied in part LinkedIn's motion to dismiss the FAC. The Court dismissed all of Plaintiffs' claims based on the Add Connections contact import process, i.e., Plaintiffs' claims under the Stored Communications Act, the Wiretap Act, and California Penal Code § 502. The

Court also dismissed Plaintiffs' claims under the "unfair" and "fraudulent" prongs of the UCL. With respect to Plaintiffs' remaining claim under California's common law right of publicity and derivative claim under the UCL's "unlawful" prong, the Court dismissed all claims based on connection invitation emails, but allowed claims based on reminder emails to proceed. The Court granted Plaintiffs leave to amend. On August 28, 2014, Plaintiffs filed a Second Amended Complaint ("SAC"), reasserting claims based on reminder emails under California's common law right of publicity and UCL, and adding a new claim under California's statutory right of publicity, Cal. Civ. Code § 3344.

ER 526. On September 18, 2014, LinkedIn moved to dismiss the SAC. ER 492. On November 13, 2014, the Court granted in part and denied in part LinkedIn's motion to dismiss the SAC, dismissing Plaintiffs' claim under Cal. Civ. Code § 3344. The Court granted leave to amend. On December 15, 2014, Plaintiffs filed the Third Amended Class Action Complaint ("TAC"), reasserting the same claims asserted in the SAC. ER 426. On January 9, 2015, LinkedIn filed an answer to the TAC. On January 13, 2015, the Parties participated in a mediation session with Antonio Piazza of Mediated Negotiations in San Francisco, California. The Parties subsequently accepted a mediator's proposal for a class action settlement subject to reaching agreement on remaining material terms and execution of a written

Settlement agreement. The Parties executed a written Settlement agreement on June 11, 2015.  ER 35.

On September 15, 2015, the District court granted preliminary approval of the Settlement and set a Fairness Hearing on February 11, 2016. ER 328. On November 30, 2015, Class Counsel filed its motion for attorneys' fees. ER 304. On December 13, 2015, Appellant filed her Objection to the Settlement and proposed attorneys' fee award. ER 274.

On February 11, 2016, Appellant appeared at the Fairness Hearing by counsel to oppose the Settlement and attorneys' fee award.  At the Fairness Class Counsel repeated, almost verbatim, the material contained in their papers, while failing to address Appellant's objections. No oral findings or orders were made. ER 7.  A hearing transcript was not ordered.  On February 16, 2016, the District court approved the Settlement and attorneys' fee award. ER 3. Appellant filed her Notice of Appeal on February 17, 2016.  ER 218. Final Judgment was entered on February 19, 2016.  ER 1.

*Standard of review*

There appears to be disagreement among appellate courts whether the "abuse of discretion" standard of review extends to both findings of fact and findings of law in regards to a district court's approval of a class action settlement. *See, e.g. F.W.F., Inc. v Detroit Diesel Corp.*, 308 Fed. App'x 389, 390 (11th Cir.

5

2009) ("abuse of discretion" in regards to district court's findings.); *See*, *In re*
*Prudential Ins. Co. of Am. Sales Practice Litig.,* 148 F.3d 283, 299 (3d Cir. 1998)
(An appellate court will reverse a settlement approval only when the District Court
has committed a "clear abuse of discretion.") *See also*, *Bailey v. Great Lakes*
*Canning, Inc.,* 908 F.2d 38, 42 (6th Cir. 1990). ("This Court [the Sixth Circuit]
reviews the District Court's approval of a settlement for an abuse of discretion.")
*But see, e.g. F.W.F.,* *Waters v. Int'l Precious Metals Corp.*, 237 F.3d 1273, 1277
(11th Cir. 2001) (reviewed district court's interpretation of class action settlement
*de novo*); *See also, Shrader v. White,* 7761 F.2d 975, 980 (4th Cir. 1985); *Mace v.*
*Van Ru Credit Corp.,* 109 F.3d 338, 340 (7th Cir. 1997); *Forbush v. J.C. Penny*
*Co., Inc.,* 994 F.2d 1101, 1104 (5th Cir. 1993) (applying *de novo* standard of review
in regards to District Court's legal findings.)

  The split of authority appears a distinction without affect. *Black's Law*
*Dictionary* defines "abuse of discretion" as "an adjudicator's failure to exercise
sound, reasonable, and legal decision-making." (Thomson West 3rd Pocket Edition
2006 at pg. 5) The term "legal" is not qualified, meaning an appellate court would
overrule any decisions rendered by a district court who misapplied the law.
(*See*, *Marisol A. v. Giuliani*, 126 F.3d 372, 375 (2d Cir. 1997) (failure to adhere to
proper legal standards is abuse of discretion.) *See also*, *Protective Committee for*
*Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414,

434, (1968). (When a district court approves a settlement which is not based upon "well-reasoned conclusions arrived at after a comprehensive consideration of all relevant factors," its decision will not survive appellate review.)

## SUMMARY OF ARGUMENT

In our era LinkedIn is the gatekeeper to the job market for the average worker. LinkedIn's customer is the job seeker. LinkedIn dominates the job search market on an unprecedented monopolistic level. Never has the America worker been dependent upon a single private company to access the job market. This would not be problematic if LinkedIn remained ethical and fair. But this class action settlement demonstrates LinkedIn is not fair or ethical.

A class action settlement, regardless of the amount offered by the settling defendants, must be fair, legal, and guarantee that the identifiable class members be compensated on some level. *See,* 28 U.S.C § 1713. (A class action settlement cannot result in "a net loss to the class member," unless the court makes a "written finding that non-monetary benefits to the class outweigh the monetary loss.") *See, Plummer v. Chemical Bank*, 668 F.2d 654, 658 (2d Cir.1982); *Grunin v. International House of Pancakes*, 513 F.2d 114, 123 (8th Cir.), cert. denied, 423 U.S. 864, (1975). (In approving the proposed settlement of a class action, a District Court has the fiduciary responsibility of ensuring that the settlement is fair and not a product of collusion, and that the class members' interests were represented

7

adequately.) *See also, Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 279-280 (7th Cir.2002). (District Courts should "exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions"…the court's role is akin "to the high duty of care that the law requires of fiduciaries.") *See also*, *Mirfahisi v. Fleet Mortgage Corp., 356* F.3d 781, 784 (7th Cir. 2004); *citing, Uhl v. Thoroughbred Technology & Telecommunications, Inc.,* 309 F.3d 978, 985 (7th Cir.2002); *Culver v. City of Milwaukee,* 277 F.3d 908, 915 (7th Cir. 2002); *In re Cendant Corp. Litigation,* 264 F.3d 201, 231 (3d Cir.2001); *Grant v. Bethlehem Steel Corp.,* 823 F.2d 20, 23 (2d Cir.1987). ("Because class actions are rife with potential conflicts of interest between class counsel and class members [citation omitted] district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole.")

The Settlement releases claims which are a miniscule fraction of the relief provided if any. Class members were forced to complete a claims form which exposes them to perjury charges on the remote possibility of a small recovery. The notice failed to notify the class they were waiving a statutory penalty of $750 pursuant to *California Civil Code* § 3344. The *cy pres* distribution is to a recipient on which Defendant LinkedIn's founder is on the Board of Trustees. The Class

was not informed because key documents were withheld from the Settlement website.

Appellee may question Appellant's motives for objecting to the Settlement, while arguing that she could have easily opted out of the Settlement to protect her legal rights. Certainly, Appellant could have opted out of the Settlement, but she remains convinced this class action is the only feasible means by which she and a multitude of others will be compensated for their losses, which is a result of res judicata, and not necessarily the talents of this particular Class Counsel. *See*, *In re Air Crash Disaster at Florida Everglades*. 549 F.2d 1006, 1012 (5th Cir. 1977) (observing that "the number and cumulative size of the massed cases created a penumbra of class-type interest on the part of all the litigants and of public interest on the part of the court and the world at large.")

The class action device is the only method by which smaller claims can be adjudicated in mass, and is a crucial, arguably exclusive, deterrent for those companies inclined to defraud consumers, if only a few dollars at a time.

ARGUMENT

## I. The District Court Erred in Approving a Class Notice which Failed to Apprise the Class Regarding the Value of the Claims Released

A violation of *California's Statutory Right of Publicity* Cal. Civ. Code § 3344[1]

is subject to a statutory penalty of at least $750.  Here, the proposed settlement would

at best compensate a few class members in an amount less than $10, or 1.3% the

value of the individualized claims.  If the lowest possible statutory penalty was

imposed per class member the penalty alone would be 1.56 billion dollars. There is

little doubt LinkedIn violated the publicity rights of the entire class, and an electronic

record exists substantiating the violations. As stated in the motion for approval:

> Here, the Plaintiffs' claims stem from the same common course of conduct as
> the claims of the Settlement Class Members. All Plaintiffs and all Class
> Members utilized LinkedIn's Add Connections feature and had emails sent on
> their behalf by LinkedIn inviting their contacts to join the social networking
> site. The typicality requirement is thus satisfied here.

ER 408.

The settling parties argue that the class claims risk being dismissed based upon

consent but this issue was fully litigated on the motions to dismiss and the consent

argument would not preclude the claims from being considered on the merits.  The

District Court dismissed the concern that many class members would have been

entitled to the statutory penalty, while neglecting to answer the concern of lack of

notice of the issues. ER 12.

---

[1] California Civil Code § 3334 is set forth verbatim in Appellant's Addendum pg 1.

## II.      The Claims Form was Designed to Discourage Claimants

The claims form forces the class members to make confusing statements under the penalty of perjury including the following:

> "I used Add Connections to import information from one or more external email accounts and send emails to one or more persons who were not LinkedIn members between September 17, 2011 and October 31, 2014."

ER 71.

This sentence was confusing for class members because it seems to imply the emails were sent by the class member purposefully when in fact most emails were sent automatically by LinkedIn without the class member's knowledge. A class member who found the verbiage confusing would likely opt for not completing the claims form instead of risking committing perjury for less than $10. The claims form also forces the class members to declare under penalty of perjury the following:

> "I believe I was injured by any such use of my name or name and profile picture."

ER 71.

Most non-lawyers consider the word "injury" to refer to a physical injury. The claims form as drafted will have a chilling effect on claimants who do not wish to make a statement under the penalty of perjury they have been injured. Additionally, it is unprecedented for a class action claims form to force class members to make statements under penalty of criminal perjury as to the ultimate

facts in dispute. The class members are forced to undertake the risk and obligations

associated with making statements under oath without legal advice. If the class

members were believed they may risk penalties and jail time in exchange for the

possibility of receiving $10 herein they would likely not participate in this

Settlement. The Settlement fails to release class members from any liability

resulting from the statements solicited under penalty of perjury. The exposure

Class Counsel has brought upon the class members far outweighs the benefit of

possibly receiving no more than $10.

> If the claims process deters class members from filing claims, the settlement
> may have less value to the class than the parties assert. Obtaining complete
> information about claims presented via an unimpeded process will assist you
> in determining the full value of the settlement and hence its reasonableness,
> fairness, and adequacy to the class. Avoid imposing unnecessary hurdles on
> potential claimants. Managing Class Action Litigation: *A Pocket Guide for
> Judges* (Third Edition - 2010) Federal Judicial Center, Barbara J. Rothstein
> & Thomas E. Willging

## III.   The Release Included Future Claims & is an Unreasonably Broad Insurance Policy for LinkedIn

The Release states in pertinent part:

"Released Claims" means any and all...claims...that were asserted or could
have been asserted arising from or related to allegations in the Action
regarding the alleged use of Add Connections to grow LinkedIn's member
base, including, without limitation, (i) accessing, importing, storing and/or
using information from LinkedIn members' external email accounts; (ii) using
LinkedIn members' names, photographs, likenesses, and/or identities in
emails relating to Add Connections; or (iii) related disclosures,
representations, and omissions.

12

ER 45.

The Release goes too far by releasing all related claims including future claims. The Release is an insurance policy LinkedIn can now use consumer data, including photographs and depictions into the indefinite future without restraint.

## IV.    The Prospective *Relief* Takes from the Class More than it Gives

The Settlement states the following:

LinkedIn has added the following language to Add Connections import permission screens. First, language on the permission screen itself was changed from "We will not store your password or email anyone without your permission" to "We'll import your address book to suggest connections and help you manage your contacts.

ER 51.

The new replacement sentence does nothing to disclose data will be retrieved during the "address book" import and that the data will be used by LinkedIn for hundreds of millions of dollars in profits. The only disclosure is restating the obvious.

The Settlement continues:

Second, LinkedIn added a "Learn More" button to the permission screen, stating "When you import your address book, we'll upload detailed information about your contacts to our LinkedIn servers. We'll use this information to suggest relevant connections for you, to help you browse, search, and organize your contacts on LinkedIn, and for other uses explained in our Privacy Policy.

ER 51.

13

Here, LinkedIn has at least admitted they will be collecting data during the address book import. But once again, LinkedIn fails to inform the consumer they intend to sell the data collected on the open market for profit.

LinkedIn's Privacy Policy states in pertinent parts:

Content distributed through our sharing features and third-party integrations may result in displaying some of your personal information outside of our Services.

We may also disclose your personal information to a third party as part of a sale of the assets of LinkedIn Corporation, a subsidiary, or division, or as the result of a change in control of the company or one of its affiliates, or in preparation for any of these events. Any third party to which we transfers or sells our assets will have the right to continue to use the personal and other information that you provide to us in the manner set out in this Privacy Policy. We may transfer your information and process it outside your country of residence, wherever LinkedIn, its affiliates and service providers operate.

ER 291.

The prospective relief is LinkedIn telling the class members LinkedIn will be importing their address books (data) which is taking something of value. The prospective *relief* takes value in the form of data from the class. In light of their privacy policy LinkedIn is admitting the data will be sold to third parties. This turns the concept of relief upside down.

The Settlement continues:

LinkedIn has added the following language to Add Connections invitation permission screens: "Invite friends, colleagues, and acquaintances who might like to connect, and would benefit from joining LinkedIn. If someone you invite doesn't respond right away, we'll send up to two reminders."

14

ER 51.

This is a solicitation not a disclaimer. This new language fails to inform class members LinkedIn will collect the data of the people in the class member's email contact list and LinkedIn will sell it for profit and/or expose it to a security lapse. Cybercrime is a real threat and anytime we provide a company with our data or the data of our friends we are taking the risk of exposure. Consumers should be fully informed before taking such a risk. Data is money in the tech age.

## V. The *Cy Pres* Distribution is a Conflicted Backdoor Reversion

LinkedIn wants no claims submitted or too many claims submitted because both scenarios would trigger the *cy pres* distribution. If not enough claims are submitted the remaining Settlement fund will go to the *cy pres* recipients. ER 52. If too many claims are submitted distribution would become impractical and the fund will go to the *cy pres* recipients. ER 52. The Settling parties can manipulate the process easily to ensure the *cy pres* recipients receive the fund and not the class.

One of the *cy pres* recipients NFTE presents a material conflict of interests because LinkedIn's founder, Reid Hoffman, is a member of NFTE's Board of Overseers. The Board of Overseers is a 25-person group, which oversees the NFTE's 18-person Board of Directors. ER 266. Class Counsel downplayed the conflict by relying upon *C.f. Lane v. Facebook, Inc.*, 696 F.3d 811, 821 (9th Cir. 2012) (overruling objections based upon appointment of defendant's employee to Board of

Directors of non-profit created to distribute *cy pres* funds from settlement). ER 266. However an employee of defendant sitting on a board of directors is materially different than a defendant's active founder sitting on a board for the *cy pres* recipient. Run of the mill, class counsels seem to be pushing the line further in every case until concerns of conflict of interest are extinct.

## VI. Class Counsel's Fee Award was Unreasonably High

In the Ninth Circuit, the "benchmark" fee in a common fund case is 25 percent of the fund created. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002). A court should depart from the benchmark only if there are "special circumstances" justifying the departure. In re Bluetooth Headset *Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (citations omitted). The special circumstances justifying a significant reduction is that Class Counsel did not do 3 million dollars' worth of work. Surviving a few minimal pleading disputes and sitting through a few hours of mediation should not entitle Class Counsel to 3 million dollars in fees. There were no discovery disputes. Class Counsel provided the District Court no evidence discovery even occurred, beyond claiming some Requests for Production were served, and Class Counsel's alleged intent to notice 8 depositions.

> When the parties to a class action expect that the reasonableness of the attorneys' fees allowed to class counsel will be judged against the potential rather than actual or at least reasonably foreseeable benefits to the class, class counsel lack any incentive to push back against the defendant's

16

creating a burdensome claims process in order to minimize the number of claims. Class counsel could have done much better by the class had they been willing to accept lower fees in their negotiation with Rexall. But realism requires recognition that probably all that class counsel really care about is their fees - for $865,284 spread.

*Pearson v. NBTY, Inc.,* 772 F.3d 778, 784 (7th Cir. 2014)

The amount of costs claimed represent less than 2% of the entire fee award sought which defies common fairness.

As stated previously, the prospective relief is a sham. The material portion of the fund will most likely not be distributed to the class. Class Counsel has not earned the fee requested. The results obtained for the class are generally considered to be the most important factor in determining the appropriate fee award in a common fund case. *In re Omnivision Techs.,* Inc., 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007); (the "fundamental focus is on the result actually achieved for class members") Fed. R. Civ. P. 23(h) committee note.

We thus have "remarked the incentive of class counsel, in complicity with the defendant's counsel, to sell out the class by agreeing with the defendant to recommend that the judges approve a settlement involving a meager recovery for the class but generous compensation for the lawyers — the deal that promotes the self-interest of both class counsel and the defendant and is therefore optimal from the standpoint of their private interests." [Citations Omitted] …That is an accurate description of this case; and it is why objectors play an essential role in judicial review of proposed settlements of class actions and why judges must be both vigilant and realistic in that review.

*Pearson v. NBTY*, Inc., supra, 772 F.3d at 787.

## VII. The Notice Purposefully Omitted Material Information

Rule 23(c)(2)(B)(ii) provides "[t]he notice must clearly and concisely state in plain, easily understood language the class claims, issues, or defenses." The individual notice sent to the class members failed to include a description of claims alleged. The notice included the following:

Plaintiffs asserted violations of (1) California's common law right of publicity; (2) California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, et seq.) (the "UCL"); (3) the Stored Communications Act, 18 U.S.C. §§ 2701, et seq.; (4) the federal Wiretap Act, 18 U.S.C. §§ 2510, et seq.; (5) California Penal Code § 502; and (6) the California Invasion of Privacy Act, Cal. Penal Code §§ 630, et seq. ER 79.

Class Counsel purposefully omitted any reference to California's Statutory Right of Publicity Cal. Civ. Code § 3344, the second cause of action pled on the class level in the Third Amended Complaint. This omission is intended to prevent class members from realizing their claims are worth $750 at a minimum. Since the Release reaches claims brought under Cal. Civ. Code § 3344 the class action notice should have included a disclosure that Plaintiff asserted violations of California's Statutory Right of Publicity.

CONCLUSION

The judgment and order of the District Court should be reversed.

Dated: May 23, 2016                    Respectfully submitted,


                                       /s/ Frederic Fletcher
                                       Frederic R. Fletcher
                                       Fletcher Law Offices
                                       417 2nd Street, Ste 204
                                       Eureka, CA 95501
                                       Telephone (707) 502-2642
                                       Facsimile (888) 979-8171
                                       Email: fletcher@lawca.us
                                       Attorneys for Appellant Mary Means

## <u>STATEMENT OF RELATED CASES</u>

Appellant is aware of three other appeals from the same order and  judgment which are companions to this appeal: *Brown v. Perkins*, et al. Case No. 16-15398, *House v. Perkins*, et al. 16-15430; and *York v. Perkins*, et al. Case No. 16-15414.

## <u>STATEMENT OF RELATED CASES</u>

Appellant is aware of three other appeals from the same order and judgment which are companions to this appeal: *Brown v. Perkins*, et al. Case No. 16-15398, *House v. Perkins*, et al. 16-15430; and *York v. Perkins*, et al. Case No. 16-15414.

**Form 8.** **Certificate of Compliance Pursuant to 9th Circuit Rules 28-4, 29-2(c)(2) and (3), 32-2 or 32-4[1] for Case Number** <u>16-15251</u>

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the end of the brief.*

I certify that (check appropriate option):

☒ This brief complies with the enlargement of brief size permitted by Ninth Circuit Rule 28-4. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). This brief is <u>4,363</u> words,_____lines of text or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable.

☐ This brief complies with the enlargement of brief size granted by court order dated _____. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). This brief is _____ words, _____ lines of text or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable.

☐ This brief is accompanied by a motion for leave to file an oversize brief pursuant to Circuit Rule 32-2 and is _____ words, _____ lines of text or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable.

☐ This brief is accompanied by a motion for leave to file an oversize brief pursuant to Circuit Rule 29-2(c)(2) or (3) and is _____ words, _____ lines of text or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable.

☐ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

Signature of Attorney or Unrepresented Litigant | s/Frederic Fletcher

("s/" plus typed name is acceptable for electronically-filed documents)

Date | 5-23-16

_____
[1] If filing a brief that falls within the length limitations set forth at Fed. R. App. P. 32(a)(7)(B), use Form 6, Federal Rules of Appellate Procedure.

| 9th Circuit Case Number(s) | 16-15251 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# CERTIFICATE OF SERVICE
## When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) 5-23-2016 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | s/ Frederic Fletcher

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# CERTIFICATE OF SERVICE
## When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)